**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| MARCUS BURKE, | : | MOTION TO VACATE |
| BOP Reg. # 52129-019 | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
|     v. | : | 2:16-CR-0014-RWS-JCF-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 2:19-CV-0062-RWS-JCF |

**<u>FINAL REPORT AND RECOMMENDATION</u>**

Movant Marcus Burke, a federal prisoner currently confined at the Federal Correctional Institution Butner Medium II in Butner, North Carolina, has filed a *pro se* 28 U.S.C. § 2255 motion to vacate challenging his convictions and sentences in Case No. 2:16-cv-0014-RWS-JCF-1. (Doc. 64.) The Court held an evidentiary hearing on the § 2255 motion, at which Movant was represented by counsel. (Doc. 70.) For the reasons stated below, **IT IS RECOMMENDED** that the § 2255 motion be **DENIED** and that no certificate of appealability issue.

I.    **<u>PROCEDURAL HISTORY</u>**

In April 2016, a federal grand jury returned a 31-count indictment against Movant and one other individual, charging Movant with conspiracy to defraud the government, in violation of 18 U.S.C. § 286 ("Count 1"), 16 counts of identity theft,

1

in violation of 18 U.S.C. §§ 1028(a)(7) and 2 ("Counts 2-17"), access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2) and 2 ("Count 18"), and 13 counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b)(2), and 2 ("Counts 19-31"). (Doc. 1 at 1-6.) The Court appointed an attorney, Michael Trost, to represent Movant in his criminal proceedings. (Doc. 20 at 1.)

Ultimately, Movant pled guilty to Counts 1, 19, and 20 of the indictment pursuant to a written plea agreement. (See Doc. 28.) Movant's plea agreement contained a provision titled "Limited Waiver of Appeal," which stated as follows:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the district court. Claims that Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 28-1 at 16.) Both Movant and his attorney signed the plea agreement at the bottom. (Id. at 18.)

At his change-of-plea hearing, Movant authenticated his signature on the plea agreement, and testified that he had thoroughly read the plea agreement, understood

2

its terms and conditions, and voluntarily agreed to those terms and conditions. (Doc. 55 at 2-3, 12-13.)  With respect to the appeal waiver, the Court explained to Movant that he had "pretty much given up [his appellate and collateral attack rights]" and that "[t]here are only three limited circumstances that you would have where you could ask for a review."  (Id. at 21.)   The Court proceeded to explain the three exceptions listed in the appeal waiver provision.  (Id. at 22.)  The Court asked Movant if he understood, and he testified that he did.  (Id.)  At a separate hearing, the District Judge sentenced Movant to 15 months' imprisonment on Count 1 and 24 months' imprisonment on each of Counts 19 and 20, to run concurrently with each other and consecutively to Count 1 and Movant's sentence in Case No. 1:00-CR-540-02-JEC. (Doc. 55-1 at 21-22; see also Doc. 35 at 2.)

More than seven months later, on July 31, 2017, Movant filed a *pro se* notice of appeal from this Court's final judgment.  On May 4, 2018, The Eleventh Circuit dismissed Movant's appeal as untimely.  Order at 1, United States v. Burke, No. 17-13492-AA (11th Cir. May 4, 2018).

On March 27, 2019, Movant filed documents that this Court construed as a *pro se* 28 U.S.C. § 2255 motion.  (Doc. 64.)  Movant alleged that he had requested Mr. Trost to file a notice of appeal after sentencing, and Mr. Trost led him to believe

3

that he had done so.  (Id. at 2.)  Movant's subsequent attempts to contact Mr. Trost were unsuccessful, and Movant was told that Mr. Trost was out of the country.  (Id. at 2-3.)  Movant later learned that Mr. Trost had not filed a notice of appeal within the allotted time period, and now sought leave to proceed with an appeal.  (Id.)

This Court appointed counsel to represent Movant in his § 2255 proceedings. (Doc. 65 at 1.)  The government responded that an evidentiary hearing was necessary to determine whether Movant requested trial counsel to file a notice of appeal. (Doc. 67 at 2-3.) On July 10, 2019, the undersigned conducted an evidentiary hearing at which Movant and Mr. Trost testified.  (See Doc. 70; Doc. 74.)

## II.   **EVIDENCE PRESENTED AT EVIDENTIARY HEARING**

At the evidentiary hearing, Movant testified that he was represented by Michael Trost in Case No. 2:16-cv-0014-RWS-JCF-1.  (Doc. 74 at 5.)  Mr. Trost did not discuss appeals prior to or following his guilty plea.  (Id.)  Prior to sentencing, Movant communicated with Mr. Trost about the aggravated identity theft charges, which Movant had been researching and believed "didn't fit" and he "didn't really agree with."  (Id. at 5-6.)  Movant "expressed concern" about the aggravated identity theft counts, and Mr. Trost "sent [him] some information."  (Id. at 6.)  Movant testified that he felt he should have received "a lesser charge" based on his role in the

offense, and that he took the plea "more so out of fear."  (<u>Id.</u>)  Movant asked Mr. Trost to "reconsult" with the prosecution, but the prosecution "didn't want to budge" on the aggravated identity theft charges, so Movant felt he had no choice but to take the plea.  (<u>Id.</u> at 7.)

Movant testified that Mr. Trost spoke to him briefly immediately after sentencing.  (<u>Id.</u> at 8.)  Mr. Trost did not discuss filing an appeal and said that he felt that it was "a good sentence" and that the judge was lenient.  (<u>Id.</u> at 8-9.)  Plaintiff further testified that "[Mr. Trost] never said that, you know, well, I don't agree with this, I'm going to appeal this.  All he said was he didn't see no reason, you know, to appeal from [t]his, I mean, I guess his standpoint, he didn't see no reason."  (<u>Id.</u> at 9.)  Movant then testified that Mr. Trost never explained to him what an appeal was, or the advantages or disadvantages of taking an appeal.  (<u>Id.</u>)

Movant testified that, "a few days" after sentencing, he tried to contact Mr. Trost because he had heard that his co-defendant had some of her charges dismissed and she received a lesser sentence.  (<u>Id.</u> at 7-8.)  Movant was "confused" because he believed he played a less culpable role in the offense.  (<u>Id.</u> at 8.)  Movant tried to contact Mr. Trost, but his "secretary or assistant" told Movant's family that he was out of the country and would not be back until after the 14-day period for

filing a notice of appeal had expired.  (Id.)  Movant did not hear from Mr. Trost again until "months later."  (Id.)  Movant's counsel showed him a letter Mr. Trost sent him at the Hall County Jail, and Movant testified that he had never seen it before.  (Id. at 9-10.)

On cross-examination, Movant testified that he entered into a written plea agreement containing an appeal waiver, and that he had testified during his change-of-plea hearing that he had carefully reviewed the plea agreement, that he understood all of its terms and conditions, and that the District Court had explained the appeal waiver provision to him.  (Id. at 11.)  Movant further testified that he did not tell Mr. Trost that he wanted to file an appeal when Mr. Trost spoke to him immediately after sentencing.  (Id. at 12.)

In response to Movant's testimony, the government called Michael Trost.  (Id.) Mr. Trost testified that he practiced as a criminal defense attorney for 32 years and represented Movant in Case No. 2:16-cv-0014-RWS-JCF-1.  (Id. at 13.)  He spoke to Movant immediately after sentencing, and Movant did not ask him to file an appeal.  (Id.)  Mr. Trost testified that the plea agreement contained an appeal waiver provision, and he had gone over that language "several times" with Movant prior to sentencing and invited "any questions or queries."  (Id.)  Mr. Trost stated that he

6

reminded Movant of the appeal waiver after sentencing and that, based on the record, there was no exception that would allow him to appeal.  (Id.)  Mr. Trost also advised Movant that there were no meritorious grounds for appeal, even if he was not precluded from appealing.  (Id.)  Mr. Trost testified that Movant did not indicate any confusion or disagreement with what he had explained to him.  (Id. at 13-14.)

Mr. Trost then authenticated a letter that he sent to Movant at the Hall County Jail on the day after sentencing, which was admitted without objection as Government's Exhibit 1.  (Id. at 14.)  The letter contained a copy of Movant's sentence and stated that "[u]nder the circumstances, the Judge was extremely fair in imposing your sentence.  I hope you appreciate the break you received."  (Doc. 72-1 at 1.)  The letter further stated "[a]s I explained to you the day of sentencing, there is no basis to appeal anything regarding your case, even if we had not given up the right to appeal.  Accordingly, I will not be filing a notice of appeal."  (Id.)  Mr. Trost testified that he did not receive any communication from Movant or his family after sentencing, and no messages were left with his receptionist or secretary indicating that anyone had tried to contact him.  (Doc. 74 at 14-15.)

On cross-examination, Mr. Trost testified that he went over the appeal waiver with Movant prior to the entry of his guilty plea, and, at that time, he discussed with

7

him what the appeal process was and what that meant.  (Id. at 15-16.)  Specifically,
Mr. Trost told Movant that it was not unusual to trade appellate rights for some
concessions by the government, and that he was giving up his right to appeal even if
he was dissatisfied with his ultimate sentence.  (Id. at 16.)  Mr. Trost counseled
Movant that he was giving up a valuable right, "but that under the circumstances it
was probably a wise decision."  (Id. at 17.)  Based on Movant's responses and lack
of further inquiry, Mr. Trost was satisfied that Movant made a knowing and voluntary
waiver.  (Id. at 16.)

Mr. Trost further testified that it would be his usual practice to speak to Movant
immediately after sentencing, at which time he discussed appeals.  (Id. at 17.)  As
memorialized in his letter, Mr. Trost advised Movant that he had given up his right
to appeal, but, as a practical matter, "he was given a below-guideline sentence
and . . . there really was nothing to appeal even if he had the right."  (Id.)  Mr. Trost
reiterated his testimony that neither Movant nor his family left any messages with his
secretary or on his voice mail and stated that he had no memory of being out of the
country in December.  (Id. at 18-20.)

## III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

8

The Court liberally construes Movant's § 2255 motion to raise a claim that his counsel was ineffective for failing to file a notice of appeal despite being instructed to do so, or, alternatively, for failing to adequately consult with him about his appellate rights. (See generally Doc. 1.) "[A]n attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se*." Gomez-Diaz v. United States, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)). "[A] defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." Id. at 792 (citing Flores-Ortega, 528 U.S. at 484).

Here, both Movant and Mr. Trost testified that Movant did not instruct him to file a notice of appeal after sentencing. (Doc. 74 at 12-13.) Where, as here, a defendant has not specifically instructed his counsel to file an appeal, a court must inquire "whether counsel in fact consulted with the defendant about an appeal" by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If so, counsel has rendered effective assistance. Id.

9

After having considered the testimony and evidence presented at the evidentiary hearing, the undersigned finds Mr. Trost's testimony far more credible than Movant's. As noted above, the Court credits Mr. Trost's testimony that Movant did not instruct him to file an appeal immediately after sentencing, and that neither Movant nor his family contacted him in the 14 days after sentencing and instructed him to file an appeal. (Doc. 74 at 13, 14-15, 18-20.) The Court also credits Mr. Trost's testimony that he consulted with Movant about the advantages and disadvantages of waiving his appellate rights during the plea negotiation process and that Mr. Trost again consulted with Movant immediately after sentencing, at which time he advised him that he was pleased with the sentence Movant had received and that there were no meritorious grounds for appeal. (Id. at 13-14, 16-18.) This testimony was corroborated by Movant's testimony that Mr. Trost spoke to him after sentencing and communicated that he saw no grounds for appeal, and by Mr. Trost's letter of December 9, 2016. (Doc. 74 at 8-9; Doc. 72-1 at 1.)

Based on this evidence, the Court concludes that Mr. Trost consulted with Movant about his right to appeal in a constitutionally adequate manner on more than one occasion. See Flores-Ortega, 528 U.S. at 478. Mr. Trost reviewed the appeal waiver provision of the plea agreement with Movant and made certain that Movant

understood it, which Movant acknowledged by signing the plea agreement and confirming with the Court during his change-of-plea hearing. (Doc. 28-1 at 18; Doc. 55 at 22.) Mr. Trost also advised Movant that it was wise under the circumstances to give up his appellate rights in exchange for the benefits of the plea agreement, and that there were no meritorious grounds for appeal. (See Doc. 74 at 17.) The Court finds, therefore, that Mr. Trost satisfied the duty to consult with Movant about an appeal by discussing with Movant the rights Movant had under the appeal waiver and advising Movant generally about his appellate rights. See Flores-Ortega, 528 U.S. at 478.

In any event, even if the undersigned did not find that Mr. Trost consulted with Movant about his appellate rights, Movant still has not shown deficient performance. See Flores-Ortega, 499 F.3d at 1270 (explaining that, if counsel has not consulted with the defendant, the dispositive question becomes "whether counsel's failure to consult with the defendant itself constitutes deficient performance"). Indeed, a criminal defense lawyer does not have a *per se* constitutional obligation to consult with his client about an appeal. See Flores-Ortega, 528 U.S. at 479; Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007) ("We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an

11

appeal is necessarily unreasonable, and therefore deficient.").  Instead, the inquiry turns on whether counsel's assistance was reasonable considering all of the circumstances.  Flores-Ortega, 528 U.S. at 478; Ortero, 499 F.3d 1267.

Counsel has a constitutional duty to consult with a defendant about an appeal when counsel has reason to think either: (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) the "particular defendant reasonably demonstrated to counsel that he was interested in appealing."  Flores-Ortega, 528 U.S. at 480.  This inquiry is informed by several "highly relevant" factors, including whether the defendant entered a guilty plea, whether he received the sentence he bargained for, and whether the plea agreement contained an appellate waiver.  Otero, 499 F.3d at 1270.

Here, as in Otero, Movant entered into a guilty plea, "which tends to indicate that he was interested in 'seek[ing] an end to judicial proceedings.'"  Otero, 499 F.3d at 1270 (quoting Flores-Ortega, 528 U.S. at 480).  Moreover, Movant received the sentence he bargained for, and Movant's aggregate 39-month sentence was far less than any sentence Movant would have received had he proceeded to trial and not received the benefit of dismissal of 28 additional criminal charges and sentencing reductions for acceptance of responsibility and cooperation.  See id.  Finally, the plea

agreement contained a valid and enforceable appellate waiver, which allowed Movant to appeal only under certain exceptions, none of which apply here.  (See Doc. 28-1 at 16); see also, e.g., United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993) (holding that an appeal waiver will be enforced if it was made knowingly and voluntarily).  Thus "on account of the plea agreement's broad appeal waiver, any appeal taken by [Movant] would have been frivolous and would have been an appeal that no rational defendant would have taken." Otero, 499 F.3d at 1271.  Accordingly, Movant has not demonstrated ineffective assistance of counsel, and **IT IS RECOMMENDED** that the instant § 2255 motion be **DENIED**.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the

13

[motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  Because reasonable jurists would not debate the resolution of the issues presented, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.  <u>See id.</u>  If the District Court adopts this recommendation and denies a certificate of appealability, movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  28 U.S.C. foll. § 2255, Rule 11(a).

## V.   <u>CONCLUSION</u>

For the reasons stated above, **IT IS RECOMMENDED** that the 28 U.S.C. § 2255 motion [64] be **DENIED** and that a certificate of appealability be **DENIED**.

The Clerk of Court is **DIRECTED** to terminate the referral to the undersigned United States Magistrate Judge.

**SO RECOMMENDED**, this <u>14th</u> day of <u>September</u>, 2021.

<u>/s/ J. Clay Fuller</u>
J. Clay Fuller
United States Magistrate Judge

14